Russell *v.* Duflon.

WILLIAM F. RUSSELL, Appellant, *v.* PIERRE V. DUFLON, PHILIP V. D. LOCKWOOD, THE KINGSTON BANK, et al., Respondents.

(GENERAL TERM, THIRD DEPARTMENT, FEBRUARY, 1871.)

A mortgagee who, upon foreclosure of his mortgage by advertisement and sale under the statute, receives only the amount due and expenses from the purchaser of the mortgaged premises, is not liable as trustee, to lienors subsequent to his mortgage, for the surplus.

The ordinary agreement or condition, assumed by a mortgagee, to pay the surplus to the mortgagor is not extended to incumbrancers of the mortgaged property.

Where the court make an order upon exceptions to the report of an interlocutory referee, and render judgment in accordance with the order, upon appeal from the judgment the court will not review such order, unless the exceptions to the final conclusions of law bring up for review some question affected by it.

A mortgagee who has received a surplus from the purchaser, upon a statute foreclosure sale of a prior mortgage, is liable to a subsequent judgment creditor for the balance of surplus, after deducting the amount of the second mortgage; but interest on such balance runs only from the time of notice or demand of the claim.

THIS action was commenced for the recovery of the surplus moneys arising upon the foreclosure of three mortgages, foreclosed by the defendant Duflon by advertisement and sale under the statute. The foreclosure sale under each mortgage took place April 26, 1855.

One of the mortgages was given to Duflon to secure $8,000; was executed by Nicholas Elmendorf alone, and was on his individual property. This property was sold for $12,000 at the foreclosure sale, and was purchased by Philip V. D. Lockwood, and, immediately after, Duflon caused Lockwood's title to be perfected under the foreclosure sale, and took back from Lockwood a mortgage for $8,000, part of the purchase-money on the foreclosure. The surplus arising on this sale was $3,201.54, and was left by Duflon in the hands of Lockwood.

One of the mortgages was executed by Nicholas Elmendorf and Philip V. D. Lockwood to Gilead A. Smith, and assigned to Duflon, to secure $5,000, and covered property adjoining the preceding mortgaged premises on the east, and was owned by Lockwood and Elmendorf as tenants in common. This lot was sold on the foreclosure sale to James A. Booth & Brothers, for $6,600, and immediately thereafter title by or in behalf of Duflon was perfected in the purchasers. The surplus moneys arising on the sale amounted to $982.35.

The other mortgage was executed by Nicholas Elmendorf and Philip V. D. Lockwood to Edwin Smith, and assigned to Duflon, to secure the payment of $4,000, and covered property owned by Elmendorf and Lockwood as tenants in common. This was sold on the foreclosure sale to Sterling Smith, for the sum of $5,450, and immediately thereafter title was perfected in him by or in behalf of Duflon. The surplus moneys arising on such sale amounted to $899.93.

At the time of the sales the plaintiff was the owner of two judgments in favor of the Ulster County Bank against Nicholas Elmendorf and others, upon which there was due and unpaid over $8,000 and interest, and which judgments were existing liens upon the interest of Nicholas Elmendorf in the premises at the time of the foreclosure. The judgments were docketed the 8th day of April, 1854.

Prior to the sale the plaintiff gave notice of the judgments to the agent of Duflon conducting the sale, and demanded payment to the plaintiff of the surplus moneys arising upon the sales out of the interest of Nicholas Elmendorf.

The defendant Duflon did not retain any of the surplus money in his hands, nor did he pay any over to the plaintiff; but suffered the defendant, Philip V. D. Lockwood, to retain in his hands, the entire surplus moneys arising on the sale of the property purchased by him. Duflon also suffered Lockwood to receive and take the entire surplus moneys upon the other two mortgages, as well that arising upon the interest of Nicholas Elmendorf as of his own.

Russell v. Duflon.

The defendants Duflon and Lockwood justified such appropriation of surplus moneys to Lockwood on the ground of a conveyance bearing date on the 31st day of December, 1853, and executed by Nicholas Elmendorf to Philip V. D. Lockwood, covering the interests of Nicholas Elmendorf in all the aforesaid dock property, and divers other lots and which conveyance declared that it was intended only as a security to him, the said Lockwood, to secure him against any liabilities that he had been or might be subjected to on account of Elmendorf, and also for all moneys that Lockwood had advanced or paid on account of Elmendorf, or might have become liable to pay for him, by reason of indorsements or otherwise; and further declaring, that whenever the liabilities were discharged and the moneys paid, then the property was to be reconveyed.

This suit was commenced on the 5th day of May, 1857; and the notice of pendency of suit was filed on the 19th day of May, 1858.

The plaintiff claimed that the surplus moneys should have been paid to him, and should not have been paid to Lockwood; and that Duflon was personally liable to him therefor. For the surplus moneys, which were not paid over, but retained by Lockwood, the purchaser, the plaintiff claimed also that he was entitled to a specific lien upon the premises as for unpaid purchase-money.

Lockwood, on the 7th day of February, 1854, before the foreclosure, took a simple quitclaim deed from Elmendorf and wife for all the wood land covered by the conditional deed or mortgage of December, 1853. This included all the property covered by the conditional deed, except the dock property at Wilbur; and Lockwood then assumed the payment of all the debts against the property embraced in the deed.

On the 14th of February, 1860, the cause came on to be tried before the court. After taking some testimony, it was referred to a referee to ascertain and report whether any, and, if any, what amount was due and unpaid upon the mortgage from

Elmendorf to Lockwood, and also to ascertain and report the surplus moneys arising upon the several mortgage sales.

On the 30th of January, 1863, the referee reported a clear surplus on the N. Elmendorf mortgage of $3,197.42; upon the other two mortgages, together, the sum of $936.97; and clear surplus on all the mortgages, applicable to the conditional deed, of $4,134.39; and that the total amount due to Lockwood, to be taken out of the surplus, was $2,852.39.

The plaintiff, being dissatisfied with the report, took various exceptions to it, upon the allowance and disallowance of items and other matters, and made and procured a case to be settled of the proceedings before the referee.

Upon the hearing of those exceptions, many of the exceptions were overruled, but some were allowed, and the report was so modified as to declare the clear surplus on the day of sale upon the N. Elmendorf $8,000 mortgage to be, $3,201 54
On N. Elmendorf's interest in other two mortgages, 941 14

Making entire clear surplus on N. Elmendorf's interest in all mortgages....................$4,142 68

And declared the total amount due Lockwood upon his mortgage, April 26, 1855, $1,896.26.

The cause was then brought to trial, at the Ulster Circuit, on the 2d Monday of January, 1867, upon the report of the referee, and other testimony submitted, and the court then held that the plaintiff, on the day of the mortgage sale, April 26, 1855, was entitled, out of the surplus moneys, to $2,246.42, and was entitled to recover that amount, with interest, from P. V. D. Lockwood, and in default of the payment of such amount by Lockwood, directed a sale of the 300 feet of dock for the satisfaction of the debt to plaintiff; and declared that Duflon was not liable to the plaintiff for any part of the purchase-money. No costs were allowed to any parties as against the other.

The plaintiff appealed from the decree, and, on the appeal, not only sought to review the adjudications of the court declaring that Duflon was not liable to the plaintiff for any

part of the surplus money, but also to review the adjudication of the court in overruling several of the exceptions taken by the plaintiff to the report of the referee upon the amount due to Lockwood on the mortgage.

The defendants Duflon, Lockwood, and the Kingston Bank, also made their several appeals.

*M. Schoonmaker*, for the appellant.

*A. J. Parker*, for the respondent Duflon.

*J. Hardenburgh*, for the respondent Lockwood and the Kingston Bank.

Present — MILLER, P. J., POTTER and PARKER, JJ.

PARKER, J. The plaintiff's claim against defendant Duflon, of the surplus money in question, is, I think, not well founded.

There is no pretence that Duflon received any more of the money bid upon the sale than the amount of his mortgages and costs. The plaintiff, however, claims that by selling the property under the power of sale in the mortgages, he became, as to the surplus moneys, a trustee for the benefit of the parties entitled thereto, by virtue of any liens thereon, so that he is liable, as such trustee, for such purposes, although it was never paid to him.

I confess I am unable to see how he incurred such obligation, unless the money came to his hands.

It cannot be said, I apprehend, that a mortgagee who accepts a mortgage, with a power of sale, thereby becomes a trustee for all subsequent encumbrancers. Nor is there anything in his proceeding to sell under the power which creates such relation. There is no implication of any undertaking on his part for the benefit of subsequent encumbrancers. The power is for his own benefit, exclusively; and so is the sale under it. So far I can see no chance for making him a trus-

tee for encumbrancers.   There is nothing which he holds in trust; not the mortgaged premises, them he does not hold at all, they go, on the sale, to the purchaser.   The purchase money, to the extent of the sum due on the mortgage and costs, when paid to him, is his absolutely.   He may sue the purchaser on his bid, perhaps, but, if in the capacity of trustee, it is only as trustee of the mortgagor, and not of the subsequent encumbrancers.   When the money is received by him, and he has notice of the lien, then, I apprehend, is the first time that the relationship of trustee and *cestui que trust* arises between him and the subsequent encumbrancers..   The authorities cited by the plaintiff's counsel to show that he is trustee (2 Story's Eq. Jur., §1231; 1 Turner and Russ., 469; and 1 Ves., Jr., 478), are all to the effect, merely that a *covenant* or *agreement* to charge an estate or a fund with a payment, as a general principle, in equity, as against the party making it, raises a trust.   The mortgage, doubtless, contains an agreement, or a condition assumed by the mortgagee to pay the surplus to the mortgagor.   So that, as between those parties, the trust may well arise.   But, as between the mortgagee and the lien holder, I can see no foundation for a trust, before the money, constituting the surplus, is paid over to the former.

In *Bevier* v. *Schoonmaker* (29 How., 411) an action by the owner of the equity of redemption under a sheriff's sale, who was also the holder of the lien on the mortgaged premises, next in order to the mortgagee, was allowed to maintain an action against the mortgagee, who was himself the purchaser, under a statute foreclosure, for the surplus money in his hands after the sale.   But there the plaintiff stood in the shoes of the mortgagor, and was the eldest judgment creditor, and the defendant had the surplus moneys in his hands.   The case of *Matthews* v. *Duryee* (45 Barb., 69) recognizes the liability of the party holding the surplus, to an action by the party entitled to it (in that case the widow of the mortgagor) to recover it.   And *Kirby* v. *Fitzgerald, and Delaware and Hudson Canal Co.,* v. *the Same* (31 N. Y. R., 417), was the

case of two suits brought against the same defendant for surplus moneys in his hands, arising from the sale, under a statute foreclosure, of certain mortgaged premises, on which the respective plaintiffs had judgment liens. In these suits the defendant obtained leave to pay the money into court, and the plaintiffs litigated their respective rights to it before a referee.

In all these cases, relied upon by plaintiff's counsel, the defendants had the surplus in hand; but no case has been cited by the learned counsel, and I find none, where an action has been sustained against the mortgagee, who foreclosed and sold the premises, under a statute foreclosure, for a surplus arising on the sale, which never came to his hands. On principle, I do not see how he is liable for such surplus to a mere encumbrancer. I am of the opinion, therefore, that the decision and judgment of the Special Term, as to Duflon, is right, and should be affirmed.

The defendant, Lockwood, is differently situated from Duflon, in regard to the surplus. His answer shows that he claimed the whole surplus, and that it all went into his hands. There has been no question, throughout the whole litigation, that he had it, but the question has been whether or not he was entitled to it; or, if not to the whole, to what part of it.

An interlocutory reference was had to ascertain what was the actual surplus, and what amount of it Lockwood was, under his mortgage, entitled to recover. The report of the referee, as modified by the court under plaintiffs' exceptions to it, fixed the amount of surplus arising from the interest of Elmendorf in the premises, at $4,142.68, and the net amount of Lockwood's lien on the premises at $1,896.26; thus leaving in his hands from the day of sale, a balance of $2,246.42, over and above what he was entitled to retain.

Upon the trial at Special Term, the order thus made was, of course, adopted and acted upon, and it was found that Lockwood received the whole of said surplus, and that his lien upon it was the said sum of $1,896.26; that the plaintiff, on the day of sale, was entitled to the said balance of

$2,246.42, and to recover the same of Lockwood, with inte-rest from the day of sale, and to judgment against him therefor.

The plaintiff excepted to the finding of fact, that Lock-wood's lien amounted to $1,896.26, and to the *third* and *fourth* conclusions of law, to wit, that Duflon is not liable for any part of the surplus moneys, and that neither party to the suit shall have costs as against the other. The other con-clusions of law, therefore, are unquestioned by the plaintiff. These are:

1. That plaintiff was entitled, on the day of sale, to $2,246.42 of the surplus.

2. That plaintiff is entitled to recover that sum of Lock-wood, with interest from the day of sale, amounting to $4,170.54.

3. That plaintiff is entitled to judgment against Lockwood for that sum, with interest from date of decision.

The plaintiff's counsel claims that he is entitled, under sec-tion 329 of the Code, to review the order of the court upon his exceptions to the report of the referee. He might, undoubtedly, do so, if his exceptions to the final decision of the court brought up for review any question which would be affected by that order. But he does not except to the con-clusion of the court, that the portion of the surplus to which he was entitled on the day of sale was $2,246.42, nor that the amount which he is entitled to recover of Lockwood is that amount and interest. He is not in a position, therefore, to question the correctness of that conclusion, and, as the coun-sel for defendant Lockwood contended in the argument, we cannot add to the amount given him by the decision.

It does not alter the case that the plaintiff excepted to the finding of fact that Lockwood's lien amounted to $1,896.26. An exception to a finding of fact does not compensate for the omission to except to the conclusions of law. (*Lefler* v. *Field*, 50 Barb., 407.) Exceptions to findings of fact are unnecessary and unavailing. Exceptions to conclusions of law, where the cause is tried by the court without a jury, or

Russell *v.* Duflon.

by a referee, are indispensable to raise any question for review. (*Weed* v. *The N. Y. and Harlem R. R. Co.*, 29 N. Y. R., 616; *Enos* v. *Eigenbrodt*, 32 N. Y. R., 444.) And there is no authority for reviewing, on appeal, a decision to which no exception has been taken; on the contrary, it is plainly prohibited. (*Brewer* v. *Isish*, 12 How., 481; Code, § 268.) In reviewing the judgment, therefore, upon plaintiff's appeal, we are confined to the questions raised by his exceptions to the legal conclusions of the court at Special Term, to wit, whether Duflon is liable to him for the surplus, and whether he should have recovered his costs of the action.

Upon the first of these questions, as above stated, I conclude the judgment is right, and, as to costs, in favor of the plaintiff, I think, inasmuch as in his contest with Lockwood each has, in part succeeded, it was well decided that neither should have costs as against the other.

Defendant Lockwood has also appealed from the judgment, having excepted to each of the conclusions of law which affect him in the decision. As to him, every question decided against him at the trial or by the order modifying the referee's report, is open to review.

In regard to the main question of his liability in such a suit as this, to pay over to the plaintiff the balance of the surplus, after deducting the amount of his own prior lien upon it, there can be no doubt; and although when this suit was commenced it was uncertain whether as between the plaintiff and the Kingston Bank the plaintiff was entitled to such balance, that was no bar to the suit. The plaintiff as to such balance has established his right to it, a right which existed when this suit was commenced, although not then made plain by adjudication, as it afterward was. The plaintiff's right did not depend upon that adjudication. The learned counsel of Lockwood is wrong, therefore, in claiming that the suit was premature. The counsel also insisted that it does not appear from the evidence in the case that the Kingston Bank judgments were, as against Elmendorf, the principal debtor, paid. The judgment record in the suit of Lockwood against the

Kingston Bank, which includes the findings of fact and law, shows conclusively that these judgments had been satisfied by a sale of Elmendorf's property, and the only reservation in the judgment is in favor of the Kingston Bank against moneys and property in the hands of the sheriff.

The counsel for Lockwood also makes a point upon the question of interest upon the balance found against him. I think the court, at Special Term, was in error in charging him with interest from the day of sale. No notice was given to Lockwood of plaintiff's claim to the money until the bringing of this suit, and Lockwood was not in default in withholding it from plaintiff until it was thus demanded by the suit. (*Robinson* v. *Corn Exchange, etc., Ins. Co.,* 1 Robt., 14; *Williams* v. *Storrs,* 6 J. Ch. R., 353, 358.) But from the commencement of the suit interest was, I think, allowable.

As to the appeal of the Kingston Bank, I think the judgment correct. As already intimated, the evidence shows that the judgments of this defendant had been paid, so that it was not entitled to the surplus or any portion of it.

The defendant, Duflon, has appealed from that portion of the judgment which denies him costs. This is a case in which costs are in the discretion of the court, and it is not customary to reverse a decision which vests in discretion unless there has been a palpable abuse of it. I do not see any reason to interfere with the decision of the court on this question, and am of opinion it should be affirmed.

Upon the whole case, therefore, I think the judgment as to the defendant Duflon and the Kingston Bank should be affirmed, and as to defendant Lockwood that it should be modified by deducting the interest on the sum of $2,246.42 from April 26, 1855, to May 5, 1857 (the time of the commencement of this suit), as of the latter date.

POTTER, J., concurred.

MILLER, P. J., expressed no opinion.

Ordered accordingly.